COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, PLAINTIFFS *v.*
UNITED STATES SECRETARY OF LABOR, DEFENDANT

Court No. 92–09–00608

(Decided May 12, 1995)

*Weissman & Mintz (Gabrielle Semel)* for the plaintiffs.
*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Cynthia B. Schultz);* and Office of the Solicitor, U.S. Department of Labor *(Scott Glabman),* of counsel, for the defendant.

## MEMORANDUM

AQUILINO, *Judge:* Subsequent to commencement of actions contesting denial by the U.S. Department of Labor of certification of eligibility for adjustment assistance under the Trade Act of 1974 for workers at the former Fine Chemical Division of The Upjohn Company in North Haven, Connecticut, the defendant interposed a motion in the one encaptioned above for remand to the Department "to conduct a further investigation, to consider additional data, and to make a redetermination whether petitioners are eligible for certification". The motion was granted, with the consent of plaintiffs' counsel.

I

The determination on remand, which was to affirm *Upjohn Co., North Haven, CT; Negative Determination Regarding Application for Reconsideration,* 57 Fed.Reg. 31,741 (July 17, 1992), and *Notice of Determinations Regarding Eligibility to Apply for Worker Adjustment*

688

*Assistance; Negative Determinations; TA–W–26,999; Upjohn Co., North Haven, CT,* 57 Fed.Reg. 22,492 (May 28, 1992), describes the background of the action at bar as follows:

The issue here involves a worker group which was initially certified under petition TA-W-24,041. The worker group produced several industrial chemicals[;] the largest component of production was dichlorobenzidine dihydro—DCB. As a consequence of the workers at North Haven not being separately identifiable by product, all the workers were certified because of increased imports of DCB.

All production of DCB at North Haven ceased in 1989; all production of industrial chemicals at North Haven ceased in 1990 or very early in 1991. As a consequence, the name of the North Haven facility was changed from the Fine Chemical Division of Upjohn Company to the North Haven Operations of the Upjohn Company.

Plaintiff states continuing worker separations after the expiration (April 11, 1992) of the statutory two-year certification period of TA-W-24,041. Plaintiff claims that the worker group should be recertified because the conditions are the same that justified the earlier certification. Plaintiff also claims that the Department should have used the same base year as it used in certifying the earlier petition because, but for Federal decommissioning requirements, all of the workers covered by the current petition would have been separated.

Given that section 231(1)(B) of the Trade Act does not permit the certification of workers laid off more than two years from the date of issue of a certification, the remaining more senior workers' only recourse for certification was to file a new petition—TA-W-26,999.

The plaintiff's claims for recertification are not valid for a number of reasons. First, the Department's investigation under petition (TA-W-26,999), shows that the workers were only producing intermediate pharmaceuticals, a different product from that for which the workers were previously certified. Further, these intermediate pharmaceuticals were integrated into the production of steroids at Upjohn's Kalamazoo, Michigan facility which was not under certification. Sales and production of intermediate pharmaceuticals at North Haven increased in 1992 compared to 1991 and remained steady in 1993. Employment on intermediate pharmaceuticals has remained steady in 1992 and in 1993.

Also, the remaining workers at North Haven, not producing intermediate pharmaceuticals, were engaged in decommissioning the plant. These findings would not provide a basis for using the same base year used in the certification of the North Haven worker group because the worker certification was based on increased imports of a different product—DCB, a textile dye, which was last produced in 1989.

Further, with respect to the Federal decommissioning requirements, the Department cannot take into account the layoffs that would have occurred had it not been for the new continued employment conditions created by the Federal decommissioning requirements. The requirements of other Federal laws do not provide a basis for relief under the Trade Act. Furthermore, the fact that the

petitioning workers under TA-W-24,041 were retained to decommission the plant represents a management decision not to separate these workers at the time of the original petition[.] Consequently, the base year of the original petition cannot be used.

Certification under the Trade Act is not for everyone who is in some way affected by import competition but only for those whose separations which were caused importantly by increased imports of like or directly competitive articles with articles produced by the workers' firm and which contributed importantly to declines in sales or production and employment at the workers' firm.

58 Fed.Reg. 67,424 (Dec. 21, 1993).

The plaintiffs have responded to the foregoing determination with a motion pursuant to CIT Rule 56.1 for judgment on the agency record, asserting that it is arbitrary and capricious. They argue, among other things, that the workers laid off after April 11, 1992 satisfy all three statutory criteria for certification, that they present "reasons that are both rational and compelling to deviate from the regulatory base period"[1] and that the defendant has ignored "the congressionally mandated mood of 'largesse' required in the granting of trade assistance"[2].

Plaintiffs' motion is formulated as if within the ambit of the Administrative Procedure Act, which provides that a court hold unlawful and set aside agency action, findings and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law[3], but this court's exclusive jurisdiction over this action is derived from the Customs Courts Act of 1980[4], with the scope of review restricted by that statute to determining if the findings of fact by the Secretary of Labor are supported by substantial evidence on the record. 19 U.S.C. § 2395(b). *See generally United Elec., Radio and Machine Workers of America v. Brock,* 14 CIT 121, 731 F.Supp. 1082 (1990). *Cf. Trade Act of 1974, Pub.L. No. 93–618, § 250, 88 Stat. 1978, 2029–30 (1975).

## II

That part of the Trade Act which governed the Department of Labor's Employment and Training Administration and its Office of Trade Adjustment Assistance ("OTAA") in resolving the petition for certification (and now this appeal) provided that

(a) The Secretary * * * certify a group of workers * * * as eligible to apply for adjustment assistance * * * if he determines—

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

---

[1] Plaintiffs' Reply Memorandum, p. 3.

[2] *Id.*

[3] 5 U.S.C. § 706(2)(A).

[4] 28 U.S.C. § 1581(d)(1).

   (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

   (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

  (b) For purposes of subsection (a)(3) of this section—

   (1) The term "contributed importantly" means a cause which is important but not necessarily more important than any other cause * * *.

19 U.S.C. § 2272 (1992).

  As indicated by the above recitation on remand, in 1990 OTAA issued an affirmative determination pursuant to 19 U.S.C. § 2273 for all workers separated from Upjohn's North Haven Fine Chemical Division on or after January 5, 1989[5], the year when production of DCB was terminated. That is, the agency found the increased imports of that chemical satisfied the foregoing requirements of section 2272—subject, of course, to the Trade Act's period of limitation, to wit:

### (a) Trade readjustment allowance conditions

  Payment of a trade readjustment allowance shall be made to an adversely affected worker covered by a certification * * * who files an application for such allowance for any week of unemployment which begins more than 60 days after the date on which the petition that resulted in such certification was filed * * *, if the following conditions are met:

   (1) Such worker's total or partial separation before his application under this part occurred—

    (A) on or after the date, as specified in the certification under which he is covered, on which total or partial separation began or threatened to begin in the adversely affected employment,

    (B) before the expiration of the 2-year period beginning on the date on which the determination under section 2273 of this title was made, and

    (C) before the termination date (if any) determined pursuant to section 2273(d) of this title.

19 U.S.C. § 2291(a) (1990).

A

  To the extent plaintiffs' motion is premised upon extension of that statute of limitation, neither the Department of Labor nor the Court of International Trade is at liberty to fashion such relief. Only Congress can. And only the legislature can amend the requirements regarding separation during the prescribed period for receipt of assistance.

---

[5] *See* 55 Fed.Reg. 17,837, 17,838 (April 27, 1990); 58 Fed.Reg. at 67,424, *supra.*

## B

Those individuals continuing to work at the North Haven facility in 1992 were advised to file a new petition, No. TA-W-26,999, the administrative disposition of which is now properly before the court for review. OTAA commenced an investigation of the circumstances then in existence and found that they did not meet the requirements of 19 U.S.C. § 2272(a)(3), *supra,* for assistance. The negative determination found that Upjohn's production of chemicals other than DCB had been integrated into its operations elsewhere. *See* Public Record ("PubRec") at 40. Upon further consideration, the agency added:

> * * * [W]orkers at North Haven may be certified for TAA only if their separations were caused importantly by a reduced demand for their production from a corporately-affiliated manufacturing facility whose workers independently meet the statutory criteria for certification. These conditions have not been met for workers producing intermediate pharmaceutical products at North Haven.
>
> The only other activity at North Haven is the decommissioning of the facility. This activity would not form a basis for a worker group certification. Also, the fact that there is not sufficient work remaining at the facility to warrant its remaining in operation would not form a basis for a certification.

*Id.* at 91. In other words, OTAA concluded anew that 19 U.S.C. § 2272(a)(3) was not satisfied.

Substantial evidence has been held to be that which reasonably supports a finding. *E.g.*, *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 810 F.2d 1137 (Fed.Cir. 1987). The record developed in regard to plaintiffs' petition clearly reflects such evidence in support of the determination of the agency after remand. *See, e.g.*, PubRec at 16–18 (OTAA Investigative Report); Confidential Record at 19–37 (data collection forms submitted by Upjohn). In short, as correctly pointed out in that determination, certification under the Trade Act of 1974 is not for everyone who is affected in some way by import competition but only for individuals whose separations from work are caused importantly by increased imports of like or directly competitive matter with that produced by the workers' firm and which imports contribute importantly to declines in sales or production and employment at that firm. Judgment must therefore now enter in favor of the defendant.