**Joseph T. TORRES, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 96–3367.**

United States Court of Appeals, Federal Circuit.

Sept. 12, 1997.

Rehearing Denied Nov. 13, 1997.

Karen L. Karr, Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C., Phoenix, AZ, argued, for petitioner.

Tarek Sawi, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for respondent. With him on brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Anthony H. Anikeeff, Assistant Director.

Before MICHEL, Circuit Judge, SKELTON, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

MICHEL, Circuit Judge.

Joseph T. Torres petitions for review of the final decision of the Merit Systems Protection Board ("Board") in SF–0831–96–0215–I–1. The April 1, 1996 decision of the Administrative Judge ("AJ"), which affirmed the Office of Personnel Management ("OPM") reconsideration decision denying Torres an immediate, "early out" retirement annuity under 5 U.S.C. § 8336(d)(2), became the final decision of the Board when the full Board denied review on August 13, 1996. The appeal was submitted for our decision following oral argument on August 5, 1997. Because OPM lacked statutory authority to impose the requirement it did of long term employment with the agency for Torres to be eligible for the "early out" benefits, we reverse the decision of the Board.

## BACKGROUND

The facts are undisputed here, as they were before the Board. On January 5, 1994, the Bureau of Reclamation of the Department of the Interior (the "agency") submitted a request to OPM for a grant of authority to offer voluntary early retirement in conjunction with a proposed major reduction in force ("RIF"). Based on estimates of the number of employees expected to exercise the option, OPM granted the requested authority on February 2, 1994 pursuant to 5 U.S.C. §§ 8336(d)(2), 8414(b) (1994). In granting the request, OPM delegated to the agency a variety of powers to limit the availability of the offer (e.g., "The agency may establish early retirement windows . . ." and "[t]he agency may adopt any fair and objective method for approving applications if the agency finds it must limit voluntary early retirement among its employees."). Most relevant, the grant contained the following restriction:

Early retirements are authorized for eligible employees as long as they were on Interior's rolls at least 30 days before the date of your request, January 5, 1994, and have remained continuously on the agency's rolls since that time.

Mr. Torres challenges the OPM's authority to impose this restriction, arguing that all conditions of eligibility were in the statute itself, which he met.

Mr. Torres worked for the government since 1967 until his retirement (with a break only for military service). He began work for this particular agency, though, on May 1, 1994. (As noted, the early out authority was sought in January.) After receiving several documents and oral communications which indicated to Torres that he was or might be eligible for the "early out" retirement option (including a certified summary of his federal service from OPM), Torres began negotiations for another job. He submitted an application for a voluntary separation incentive payment ("VSIP") and early retirement on February 2, 1995.[1]

---

1. This was actually Torres' second application; he withdrew an earlier one, originally filed December 6, 1994 after being informed of the possi-

On February 8, 1995, however, the Regional Personnel and Management Officer of Interior informed Mr. Torres by letter that he was not eligible for early retirement because he was not an employee before the eligibility deadline of December 6, 1993. The letter stated, "[W]e note that you did not transfer to the Department of the Interior until May 1, 1994, almost 4 months [sic] after the deadline to be eligible for early retirement." The letter continued by stating Mr. Torres could remain in his position or retire with just the VSIP, and concluded by asking Mr. Torres to respond.

Torres apparently resigned and then appealed this denial of an early retirement annuity to OPM. The denial was upheld in an initial determination and on reconsideration. Torres then petitioned to the Board, and the AJ affirmed the OPM's decision, reasoning that Mr. Torres was not "serving in a geographic area designated by the Office of Personnel Management" as required by the statute because he was not working for Interior as of one month before the early-out authority was requested. The AJ also rejected Mr. Torres' arguments that he was induced to retire by misrepresentation. The full Board denied review, and Torres timely appealed to this court. Our jurisdiction over the appeal is clear. *See* 28 U.S.C. § 1295(a)(9) (1994); 5 U.S.C. § 7703 (1994).

## ANALYSIS

■ This appeal presents an important question of first impression whether OPM can restrict eligibility for statutorily authorized early out annuities beyond the statutory criteria under some theory of implied authority or deference.

The governing statute is 5 U.S.C. §. 8336(d)(2)[2] which provides, in relevant part:

(d) An employee who—

. . .

(2) while serving in a *geographic area designated by the Office of Personnel Management* is separated from service

voluntarily during a period in which the Office [of Personnel Management] determines that—

(A) the agency in which the employee is serving is undergoing a major reorganization, a *major reduction in force*, a major transfer of function; and

(B) a significant percent of the employees serving in such agency will be separated or subject to an immediate reduction in the basic rate of pay . . . ;

after completing 25 years of service or after becoming 50 years of age and completing 20 years of service is entitled to an annuity.

(emphasis added). Torres argues that under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, ·2781–82, 81 L.Ed.2d 694 (1984), and our decision in *Travelstead v. Derwinksi*, 978 F.2d 1244, 1250 (Fed.Cir. 1992), OPM may not take administrative action which is contrary to the clear intent of Congress or otherwise outside the scope of Congress' delegation to OPM. Thus, Torres argues the agency cannot limit the group who may take advantage of the statute beyond the class announced by Congress in the plain meaning of the statute, and use of the phrase "is entitled" in the statute shows Congress meant the benefit to be non-discretionary. The government does not cite to any other statute or any regulation promulgated under section 8336(d), but argues that OPM has the authority to impose the additional eligibility requirement either because (i) the statute's use of the words "period" and "geographic area" show Congress clearly intended to give OPM broad power to impose time restrictions with respect to who could receive the benefit, or (advanced at oral argument) (ii) the statute is ambiguous, and under step-two of the test in *Chevron*, OPM's reasonable interpretation should be accorded deference.

■ The meaning of this statute, however, is clear. *See Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82 ("First, always, is whether Congress has directly spoken to the

---

bility of a VSIP and to allow OPM to process his paperwork.

**2.** 5 U.S.C. § 8414(b)(1), in near identical terms, provides similar annuity benefits for members of the Senior Executive Service.

**1290**

precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). The statute delegates only two tasks to OPM: (1) "determine" where the geographic limits of the offer for early retirement shall extend; and (2) "determine" whether a "major" personnel action is occurring. The word "period" in the statute is clearly limited by the "that ..." clause; thus, the "period" in the statute left to OPM's discretion is the "period" during which a major reduction in force ("RIF") (or other listed reduction) is occurring. OPM may limit the time in which a major RIF is deemed occurring, but there is no support in the language of the statute, or its legislative history, for an interpretation that the "period" pertains to the duration an employee has been at the agency undergoing the RIF, particularly to require that to be eligible for the annuity for which the employee otherwise qualifies he must have been at the agency at least 30 days before the early authority, later granted, was requested.[3] Similarly, it would bend the meaning of the statute beyond comprehension to say that Torres was not in a "geographic area" covered by the early retirement program; other employees working in his office at Interior at the time the RIF was occurring were offered the early retirement option. The statute's particular use of the word "geographic" shows OPM was only to make determinations about where in the country the early retirement offer would be made, not when in time.[4] Where Congress has clearly and plainly delegated only and very specific limited tasks to OPM, we will not infer others.

Because the meaning of the statute is clear and Congress has spoken, we do not reach OPM's argument regarding the asserted reasonableness of the agency's interpretation.

*See Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781. We do note, however, that other parts of section 8336, in particular subsections (e), (f), and (g), support our interpretation of the statute; those subsections give annuities, of right, to all employees who meet certain age and service requirements for (non-early) retirement listed therein. These subsections also use the phrase "is entitled." Reasonable policy also supports our reading of the statute; Congress might have wanted to avoid the possibility of OPM arbitrarily limiting such benefits to certain employees at an agency undergoing a RIF. Under our interpretation, OPM can only limit benefits geographically (thus avoiding individual distinctions) and, temporally, to when a major RIF (or other listed major action) is occurring (since, as the legislative history makes clear, the reason for offering voluntary early retirement is to avoid involuntarily removing some employees through the RIF). If an employee is in an agency undergoing a major RIF, as decided by OPM, in a selected geographic area also as determined by OPM, and meets the years in government service and age requirements listed in the statute, the employee "is entitled" to the immediate retirement annuity.

We recognize that OPM might view our holding as severely limiting its ability to control voluntary early retirement offers. However, Congress did leave OPM with significant control. Should OPM extend a voluntary retirement option to a geographic area which it has determined is undergoing a major RIF only to witness an unexpected number of acceptances, it can simply elect to cancel the major RIF (since likely it will not be necessary in that case). If an agency is contemplating a major RIF but does not want to extend early retirement benefits to employees who have not worked for the agency longer than 30 days, it may choose

---

3. Section 8414(b)(1), which should be read *in pari materia* with the relevant statute for the present purpose since it extends the same benefits to other employees, is even more explicit. By placing "as determined by the Director" in parenthesis, the statute is even more clear that the central issue is whether a major RIF (or other action) is occurring, and Congress merely delegated to OPM the administrative task of determining this fact.

4. Even assuming that the legislative history could vary the plain meaning of the statute, OPM has not proferred any legislative history supporting its interpretation. Our examination uncovers nothing in the legislative history regarding this additional requirement of time-in-service at the agency or employment preceding the request for early out authority.

not to offer employment to individuals who would be eligible, or likely, to elect early retirement during the 30 day period preceding the early out authorization request and while the RIF is occurring.[5]

In sum, we hold that OPM went beyond its delegated authority when it imposed a requirement for previous employment at the agency for early retirement and the Board erred in upholding OPM's decision on the ground that because Torres was not employed at the agency before December 6, 1993, he was not within the "geographic area designated" by OPM.

We do not address Torres' arguments about procedural irregularities in the Board's adjudication, because they are mooted by our decision on the merits.

For the reasons stated above, the decision of the Board is

*REVERSED.*

For Supplemental Opinion, see 1997 WL 751427.

---

**5.** The record does not indicate why the agency was hiring while in contemplation of and during a RIF.